UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20879-KMM

UNITED STATES OF AMERICA

v.

ANASTAS KARENOVICH BABAKHANYAN,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON SUPERVISED RELEASE VIOLATION

**THIS MATTER** is before the Court on a Petition for Warrant or Summons for Offender Under Supervision arising from alleged violations by Defendant Anastas Karenovich Babakhanyan (ECF No. 34). The Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, referred this matter to the undersigned Magistrate Judge for all necessary and proper action with respect to any and all violations of supervised release (ECF No. 38). Following an evidentiary hearing and argument by both sides, I find the evidence sufficient to establish probable cause with respect to some but not all of the violations alleged, and accordingly, **RECOMMEND** that the Court find Defendant committed those violations and conduct a final revocation hearing.

**I.  BACKGROUND**

Defendant was originally sentenced on April 11, 2019, on his conviction for one count of possession of a firearm after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g). On April 16, 2021, Defendant began a term of supervised release commenced in the Southern District of Florida, which is scheduled to expire on January 14, 2024 (ECF No. 34).

## II.   THE PENDING PETITION FOR REVOCATION

The Petition for Warrant or Summons For Offender Under Supervision was filed on September 8, 2022 and alleges four violations of his supervision:

1. Violation of Special Condition, by failing to participate in the Location Monitoring Program. On July 30, 2022, defendant was scheduled to remain at his residence. At approximately 9:06PM, the defendant had unauthorized leave from the residence and did not return until approximately 9:28PM. The defendant did not have permission to leave the residence during that time.

2. Violation of Special Condition, by failing to participate in the Location Monitoring Program. On August 4, 2022, the defendant had an approved schedule to complete errands and submit a urinalysis sample and return at 2:30 PM, but did not return to his residence until approximately 2:50PM.

3. Violation of Mandatory Conditions, by unlawfully possessing or using a controlled substance. On August 11, 2022, the defendant submitted a urine specimen which tested positive for the presence of Opiates in [the] local laboratory; and was confirmed positive by Alere Toxicology Service, Incorporated.

4. Violation of Special Condition, by failing to participate in the Location Monitoring Program. On September 2, 2022, the defendant was scheduled to remain at his residence. At approximately 9:58PM, the defendant had an unauthorized leave from the residence and did not return until approximately 10:14PM. The defendant did not have permission to leave the residence during that time.

(ECF No. 34).

## III.   THE EVIDENTIARY HEARING

The Government presented the testimony of United States Probation Officer Juan Lora, who began supervising Defendant in May of 2022. Officer Lora explained that the supervision was transferred to him as a result of the modification to Defendant's term of supervision to include participation in the location monitoring program. Officer Lora explained that Defendant was monitored via radio frequency, with the following parameters: the device had a range of 120 feet from its base, permitting Defendant to move 120 feet away from the base without triggering an alert; also, the signal afforded a 5 minute "grace" period, so that if Defendant did leave the range

but returned within 5 minutes, no alert would be triggered.

Officer Lora testified that the first violation occurred on July 30, 2022. Defendant left the residence without authorization at 9:06 P.M., returning at 9:28 P.M. Minutes later, Defendant sent a text message to Officer Lora to modify his approved schedule to allow Defendant to walk his dogs from 9–9:30 P.M. Officer Lora explained that he solicits a proposed weekly schedule from his supervisees every Wednesday; while he may approve a request to modify a schedule, he requires notice to approve. Officer Lora was off duty that night and did not see the message to approve it.

Defendant testified and admitted that he had left his apartment to walk his dogs but explained that he remained in the small courtyard in front of his building, and he believed that he was within range. When an alert went off, he testified, he then sent the text message to Officer Lora seeking authorization to walk the dogs because he did not want to get in trouble.

On August 4, 2022, Officer Lora testified that Defendant was scheduled to have authorized leave from the home until 2:30 P.M. An alert issued when Defendant failed to return home at 2:30 P.M.; rather, he entered the residence at 2:50 P.M. Though Officer Lora testified that on other occasions, Defendant had contacted him to advise him if he was running late, Officer Lora did not believe Defendant did so on this occasion. Defendant testified that his leave on August 4 was approved for him to run his errands and go to the gym, but he was also required to visit probation for the purpose of submitting a drug test. He testified that he was at probation longer than expected then encountered heavy traffic, resulting in him returning home late. Defendant similarly could not remember whether he called Officer Lora on that particular occasion to explain why he was late; he had on other occasions at least contacted Officer Lora to avoid getting in trouble when traffic made him late.

On August 11, 2022, Defendant submitted a urine sample that tested position for the presence of opiates. Officer Lora testified that Defendant had explained to him that he had seen a doctor and that doctor gave him a pill, but Officer Lora testified that Defendant did not have a prescription. Defendant testified that he had been prescribed opiates by a doctor; he has an artificial artery in his leg that causes him pain. The opiate medicine that had been prescribed had upset his stomach and he asked for an alternative medication. The doctor provided him a sample, in manufacturer's packaging, to test whether he could tolerate the medicine. Defendant testified that he tolerated the medicine and his doctor gave him a prescription. Officer Lora confirmed that Defendant did have a prescription for the opiate medicine, but that written prescription was made after the positive test of August 11.

Officer Lora described the fourth violation, which occurred on September 2, 2022. At 9:58 P.M., Officer Lora received an alert of a location monitoring violation. Officer Lora explained that he was contacted by the system vendor, who had called Defendant to verify the violation that triggered the alert, and was advised by Defendant that he was just out front smoking a cigarette. Officer Lora testified that based on the range established by the monitoring device, no alert would have triggered by Defendant stepping out front and remaining there. Officer Lora testified that while Defendant is not informed of the permissible range for him to move out front, he believed the front step would be within range. Defendant testified that he was indeed on his front step and when he received the call from the vendor advising him of the alert, the caller informed him that "sometimes that happens" and the machine makes mistakes. Defendant testified that on at least two occasions he had received alerts while standing in his kitchen.

IV. **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In probation revocation hearings, a court must only find that the defendant violated a

4

condition of his supervised release by a preponderance of the evidence, rather than beyond a reasonable doubt. 18 U.S.C. § 3583(e)(3); *see also Johnson v. United States*, 529 U.S. 694, 700 (2000) (noting that, even though such violations can lead to imprisonment, the violation need not be criminal). The Federal Rules of Evidence do not apply in supervised release revocation proceedings. *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). In weighing whether to admit hearsay testimony in a supervised release revocation proceeding, courts must "balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." *Id.* (citing *United States v. Penn*, 721 F.2d 762, 764 (11th Cir. 1983)). Based on the above testimony, the undersigned makes the following findings of fact.

The first two violations accuse Defendant of failing to participate in the location monitoring program, on July 30 and August 4, 2022. It is not meaningfully disputed that Defendant was outside the residence on both of those occasions as alleged. Though he testified that he did not think he was out of range on July 30 while walking his dogs, he received an alert and *then* sought permission for leave to walk the dogs. On August 4, similarly, Defendant admitted that he was late returning from running errands, though with the explanation that he had spent too long at probation and got stuck in traffic. Accordingly, the evidence is sufficient to find, by a preponderance, that Defendant failed on both occasions to participate as ordered in the location monitoring program.

Violation number three accuses Defendant of unlawfully possessing or using a controlled substance, specifically opiates, on August 11, 2022. It is not meaningfully disputed that the opiate medicine ingested by Defendant was distributed to him by a doctor, yet the Government argues that because it was not dispensed according to a written prescription, his use of the medicine was unlawful. Standard condition of supervised release No. 7 prohibits a supervisee from using any

5

controlled substance "except as prescribed by a physician." (ECF No. 29 at 3). The Government's proffered definition of "prescribed" as limited to that evidenced by a written document is more limited than Merriam Webster's definition: "to write or give medical prescriptions."[1] Officer Lora corroborated Defendant's testimony that he has a number of serious prior injuries, including gun shot wounds, and that Dr. Surgi did reduce his prescription of the opiate medicine to a writing after August 11; Defendant's testimony that he ingested a sample of the medicine given to him by Dr. Surgi to test his tolerance to the medicine before writing that prescription is unimpeached. The evidence does not support, by a preponderance standard, that Defendant possessed or used the opiates unlawfully on August 11, 2022.

The final violation also arises from Defendant's failure to participate in the location monitoring program, on September 2, 2022. This is the only event that the Parties meaningfully dispute. Officer Lora, for his part, insists that on this occasion, Defendant's explanation is implausible because an alert would not have triggered if Defendant had been sitting out front; Defendant insists that he never left the front step, says he reported his location when he was called, and describes a series of other misfires by the equipment. I find Defendant's explanation credible. Officer Lora admitted that, while the range should have been set at 120 feet, it was not calibrated to confirm the range that he intended to set. Defendant's testimony about the other events of false alerts when he was home was specific and unrebutted. Moreover, I find it meaningful that Defendant admitted (and also explained) his other violations in weighing his testimony with regard to this violation. Although Officer Lora credibly testified to the information as it was conveyed to him by the automated system and vendor, I find the evidence lacking to support by a preponderance violation No. 4.

---

[1] https://www.merriam-webster.com/dictionary/prescribe.

## V. RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the District Court adopt the finding that Defendant Babakhanyan violated his conditions of supervised release as alleged in the Petition as to Violations Nos. 1 & 2; that the evidence does not establish Violations Nos. 3 & 4; and that the District Court hold a hearing to determine the appropriate disposition.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, on this 11th day of May, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:   The Honorable K. Michael Moore
      Counsel of record